UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROBERT LEE PENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:14-CV-016-BG |
| | ) ECF |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Robert Lee Pena seeks judicial review of a decision of the Acting Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge transferred this case to the United States Magistrate Judge, but the parties did not consent to proceed before a magistrate judge. Pursuant to the order of transfer to the magistrate judge, the undersigned now enters this Report and Recommendation.

The undersigned has considered the arguments of the parties, the applicable law, and the administrative record as a whole and recommends that the Acting Commissioner's decision be reversed and Pena's case be remanded to the Social Security Administration for an award of benefits.

**I.   Procedural History**

Pena applied for DIB and SSI over seven years ago on October 15, 2007. (Tr. 12, 359, 364.) He thereafter testified at four hearings, including a supplemental hearing. (Tr. 36–45, 46–55, 55–90, 91–105.) The Appeals Council found fault with two decisions issued by an Administrative Law Judge (ALJ) and remanded for further administrative proceedings in April 2010 and in

October 2012. (Tr. 125, 154.) In the first remand, the Appeals Council remanded based on evidence related to Pena's IQ and the council's finding that "it would appear the claimant would satisfy Listing 12.02A." (Tr. 126.) The Appeals Council remanded the second time because the ALJ failed to consider the entire adjudicative period back to 2007. (Tr. 154–55.)

A second ALJ held a hearing on April 10, 2013, and issued a decision on May 9, 2013. (Tr. 12–39, 36–45.) That decision was upheld by the Appeals Council and is now before the court. (1–3.) Pena brings three points of error. In his first point of error he contends that the ALJ erred in failing to find that his mental impairments meet or equal Listing 12.02 in the regulations. Pena's first point of error has merit.

## II. Discussion

At the third step of the sequential evaluation process used in DIB and SSI applications, the ALJ compares the claimant's impairment(s) with categories of impairments considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). Often referred to as "the listings," these impairments are set out in appendix 1 of the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1 (2014). If the claimant's impairment(s) meet or equal the criteria of one of the listings in appendix 1, the claimant is presumed disabled and qualifies for benefits without further inquiry. *Loza*, 219 F.3d at 390. The claimant bears the burden of proof at this step of the sequential evaluation and must produce findings that support each of the criteria of the listing at issue. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Listing 12.02 is the listing for organic mental disorders associated with dysfunction of the brain and related psychological or behavioral abnormalities. 20 C.F.R. pt. 404, subpart P, app. 1

§ 12.02. The threshold criteria of Listing 12.02 require a showing of an organic factor that has resulted in an abnormal mental state and loss of previously acquired functional abilities. § 12.02A. This may be shown by a loss of measured intellectual ability of at least 15 IQ points from that assessed prior to an event that caused the decline in functional abilities. § 12.02A(7).

Pena is restricted in his abilities by mental retardation. (Tr. 705.) When he was nine years old, his IQ was assessed between 80 and 90, which is "low average." (Tr. 451, 794.) In 2008 a psychologist assessed his IQ at 62, which denotes abilities in the lower one to two percent of his age group, and results of subsequent testing in 2010 and 2013, when he was forty-eight years old, show the same. (Tr. 578, 704, 795.) Thus, Pena's IQ declined at some point, and psychologists suspect the decline was the result of an open depressed skull fracture and craniotomy he underwent in 2002. (Tr. 467–68, 580, 796.) Based on these facts, Pena meets the "A" criteria of § 12.02, and the Commissioner concedes this. Def.'s Br. 7.

In addition to meeting the "A" criteria, however, Pena must show that he meets either the "B" or "C" criteria, and he contends that he meets the "B" criteria. The "B" criteria require evidence that the claimant's mental limitations result in at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation of extended duration. § 12.02B. The ALJ found that Pena's symptoms did not meet the "B" criteria and specifically found that Pena experienced mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 23.)

3

In regard to activities of daily living, the ALJ based her finding that Pena suffered from only mild limitations in this functional category on the fact that Pena told a psychologist that he was capable of caring for his personal hygiene needs and could do household chores and "yard upkeep tasks." (Tr. 23, 702.) That psychologist also reported, however, that Pena became confused at times during the examination and needed help with orientation, and the psychologist was of the opinion that Pena was incapable of independently assuming responsibility for his financial affairs. (Tr. 419, 702, 705, 713.) In addition, Pena is unable to drive and does not use public transportation. (Tr. 65, 419.) In fact, one of Pena's examining psychologists was of the opinion that Pena was incapable of traveling without a companion or independently using public transportation. (Tr. 724.) That psychologist also believed that Pena was incapable of shopping without supervision. *Id*.

These facts are critical because an ability to shop, handle finances, and take public transportation are activities of daily living assessed under the "B" criteria. 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00C(1).

In regard to the second factor in the "B" criteria—social functioning—the ALJ determined that Pena experienced only mild limitations in social functioning because an examining psychologist reported that he "generally demonstrates acceptable social capabilities." (Tr. 23, 702.) However, the ALJ cited only a portion of the psychologist's statement. The psychologist also stated, "This patient reported major social activity as 'staying around home.'" (Tr. 702.) Pena's testimony demonstrates that his social activity is, in fact, limited to staying at home. He testified that he spent his days at home staring at the sky and watching traffic and stated that he sometimes visits his mother if someone drives him to her home. (Tr. 65.) The regulations advise that social isolation is an indicator of impaired social functioning. 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00C(2). "Staying around home" arguably demonstrates a degree of social isolation.

Another factor in considering a claimant's abilities in social functioning is his ability to communicate clearly with others. *Id*. Based on reports from three different psychologists and the hearing transcripts, Pena experiences a great deal of difficulty communicating clearly with others. Three examining psychologists indicated that Pena appeared confused or disoriented. (Tr. 577 ("he seemed confused at times . . ."); Tr. 714 ("not oriented to time"); Tr. 793 ("At times during the interview, Mr. Pena seemed not to understand the questions . . .").) Another psychologist noted that he was "easily confused." (Tr. 708.) And the conversation between the first ALJ and Pena demonstrates that Pena experiences difficulty communicating with others. The ALJ told Pena several times that he did not understand what Pena was trying to tell him. (*See, e.g.*, Tr. 62 ("I don't understand a word you just said."); Tr. 63 ("Say that again. I didn't understand.").) In one exchange the ALJ asked Pena whether he did household chores and Pena stated, "Yes. But right now we ain't got a rug in our house. So, I don't have to clean . . . . We had a rug. We don't have to clean no more." (Tr. 99.) Although the ALJ attempted to clarify what Pena meant, he was unable to do so. (Tr. 99–100.)

According to Pena, his former co-workers also found it difficult to communicate with him. He testified, "I've got a dent in my head, and it's—my head was cracked, and they think—when I come to work, they think I'm either drunk or something . . . but it's the medication I'm taking, and the head so—it's got a dent in it, and they always ask questions." (Tr. 99.)

In regard to the third criteria—a finding of marked difficulties in maintaining concentration, persistence, or pace—the ALJ found that Pena experienced only moderate limitations based on a psychologist's report that he remained attentive during the doctor's testing process for mental retardation. (Tr. 23.) According to the regulations, however, concentration is assessed by clinical

5

testing that requires the claimant to subtract serial sevens or serial threes or by tests that require short-term memory or tests that must be completed in a specified period of time. 20 C.F.R. pt. 404, subpart P, app. 1 § 12.00C(3). An examining psychologist noted that Pena exhibited restricted concentration in response to such testing and also noted poor short-term and long-term memory. (Tr. 703.)

Although a court should not re-weigh the evidence, it must determine whether substantial evidence supports an ALJ's determination. The evidence the ALJ cited to support her determination that Pena did not experience marked limitations in at least two of the "B" criteria is not substantial evidence to support her determination. It is not evidence that a reasonable mind might accept as adequate to support a conclusion. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

The undersigned's conclusion that the ALJ's determination is not supported by the evidence is demonstrated not only by the evidence discussed above, but also by other evidence that shows that Pena experiences marked limitations in functioning. An examining psychologist noted that Pena would be at a significant disadvantage in terms of performing an occupation that required intellectual skills or receiving training of new occupational skills. (Tr. 580.) Another psychologist noted that although Pena was able to "get by" in the past working unskilled transient jobs, he was "no longer able to compensate for his poor mental functioning." (Tr. 714.) Yet another psychologist reported that Pena would be markedly limited in his ability to make judgments on simple work-related decisions as well as markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 708–09.)

In addition, other notations from psychologists indicate that Pena functions at a level that is markedly restricted: he does not know his left hand from his right, believes that there are 3,000

6

weeks in a year, sometimes becomes confused about his age, and exhibits below average insight and judgment. (Tr. 702–03, 714.)

The court must determine whether the record, considered in its entirety, substantially supports the Commissioner's decision, which requires the court to "take into account whatever in the record fairly detracts" from the supporting evidence. *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986) (citation omitted). The evidence discussed in this Report and Recommendation substantially detracts from the ALJ's determination that Pena did not present evidence showing that his impairment meets or equals the criteria of Listing 12.02. Pena, in fact, presented such evidence. Because he did so, he should be found disabled at the third step of the sequential evaluation process.

### III.  Recommendation

Sentence Four, 42 U.S.C. § 405(g), directs that a court may reverse a decision of the Commissioner with or without remanding the case for a hearing. Pena filed his applications for DIB and SSI over seven years ago and has been waiting for a decision on his applications since that time. The delay in a final decision is due to deficiencies and errors on the part of the Commissioner whose ultimate decision is not supported by substantial evidence. For this reason, further remand would be unconscionable and would serve no useful purpose. The undersigned therefore **RECOMMENDS** that judgment be rendered in favor of Pena and this case remanded for award of benefits. *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) (finding, based on medical records, that it would be "unconscionable to remand [the] eight year old case to the Secretary for further review").

### IV.  Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   January 29, 2015.

*(signature)*
NANCY M. KOENIG
United States Magistrate Judge

8